USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  6/13/2023  

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEPHEN P. BROWN,

                                    Petitioner,

    -against-

UNITED STATES OF AMERICA,

                                    Respondent.

Case No. 14-CR-0659 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

Petitioner Stephen P. Brown ("Mr. Brown") was sentenced to 292 months of incarceration and one year of supervised release after pleading guilty to one count of attempting to entice an undercover officer, who posed as an eleven-year-old willing to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). (*See* ECF No. 9 (Indictment); ECF No. 37 (Judgment)). Mr. Brown appealed his sentence to the Second Circuit, which denied his appeal. (ECF No. 43.) Thereafter, Mr. Brown moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), seeking entry of an Order reducing his 292-month sentence to time-served and lifetime supervised release. (ECF No. 44.) That motion was denied on July 16, 2019. (ECF No. 40.)

On October 18, 2022, Mr. Brown, through his counsel, filed a motion for compassionate release/to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 53), which was fully briefed as of November 22, 2023. Mr. Brown makes the instant motion based on various health conditions and purportedly increased risk of complications from COVID-19. On March 15, 2023 and on May 25, 2023, Mr. Brown, through his counsel, filed letters providing updates regarding his deteriorating heart conditions. (ECF Nos. 61 and 62.)

For the reasons discussed below, the Court DENIES Mr. Brown's motion without prejudice.

## LEGAL STANDARD

18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify or reduce the terms of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). A court must find that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i). A court must also consider the factors set forth in section 3553(a) to the extent that they are applicable. *Id.* § 3582(c)(1)(A).

"The authority to define 'extraordinary and compelling reasons' has been granted to the United States Sentencing Commission, which has defined that term at U.S.S.G. § 1B1.13, comment n.11." *Zukerman*, 2020 WL 1659880 at *5 (citing *United States v. Ebbers*, No. 02 Cr. 11443, 2020 WL 91399, at *4-5 (S.D.N.Y. Jan. 8, 2020). "Relevant here, the Commission's policy statement and its corresponding commentary . . . . state that a court may reduce a sentence for 'extraordinary and compelling reasons,' including where the defendant is 'suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" *United States v. Hernandez*, No. 18 Cr. 834-04 (PAE), 2020 WL 1684062, at *2 (S.D.N.Y. Apr. 2, 2020) (quoting U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A)). The defendant must also not be "a danger to the safety of any other person or to the community," and "the

reduction must be consistent with [the Commission's] policy statement." *United States v. Ramos*, No. 14 Cr. 484 (LGS), 2020 WL 165812, at *1 (S.D.N.Y. Apr. 7, 2020) (citing U.S.S.G. § 1B1.13(2)-(3)).

The Section 3582(c)(1)(A) analysis requires courts to "consider[] the factors set forth in section 3553(a) to the extent they are applicable." *United States v. Gentille*, No. 19 Cr. 590 (KPF), 2020 WL 1814158, at *4 (S.D.N.Y. Apr. 9, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). The factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (4) the sentencing guidelines; and (5) "the need to provide restitution to any victims of the offense." *Ramos*, 2020 WL 1685812 at *2 (quoting 18 U.S.C. § 3553(a)).

## DISCUSSION

### I. Exhaustion

By the language of 18 U.S.C. § 3582(c)(1)(A), a defendant must first seek administrative relief, and then may only proceed to court after fully exhausting administrative appeals or the lapse of 30 days from the warden's receipt of the request, whichever is earlier. *United States v. Rivera*, No. 317CR001596VLB, 2020 WL 1909227, at *2 (D. Conn. Apr. 10, 2020). Here, the parties do not dispute that Mr. Brown has satisfied the exhaustion requirement. (*See* ECF Nos. 54 ("Brown Opening Mem.") at 11-13; *see generally*, ECF No. 57 ("Gov't Mem.")).

3

## II.     Extraordinary and Compelling Reasons

Mr. Brown submits that his deteriorating health conditions, paired with additional risks posed by COVID-19, and his advanced age, constitute extraordinary and compelling reasons for a sentence reduction.  Mr. Brown is 71 years old and suffers from arrhythmia (very rapid heart rhythm), hypertension, and high cholesterol.  (Brown Opening Mem. at 17.) More recently, as detailed in Mr. Brown's March 15, 2023 letter (ECF No. 61 (hereinafter "March 15, 2023 Letter")), Mr. Brown has been experiencing increased difficulty walking, having to stop every few feet to catch his breath.  (March 15, 2023 Letter at 1.)  In addition, on February 8, 2023 the BOP had moved Mr. Brown to FMC Devens' hospital, where inmates who suffer from medical conditions requiring intensive treatment and monitoring are housed.  (March 15, 2023 Letter at 1.)  Mr. Brown was moved to the FMC Devens' hospital because Federal Bureau of Prison ("BOP") Staff had observed him exhibiting increasingly frequent shortness of breath.  (ECF No. 62 (hereinafter "May 25, 2023 Letter") at 2.)

The Government acknowledges Mr. Brown's advance age and various heart and other health conditions, but nonetheless argues that he fails to meet his burden of establishing extraordinary and compelling reasons for his release.  (Gov't Mem. at 18.)   In particular, the Government points out that Mr. Brown "has been has been vaccinated [against COVID-19], twice boosted and had COVID-19 in January 2022." (Gov't Mem. at 18.)

Though Mr. Brown does not provide any corroborating medical records, he states in his May 25, 2023 letter that physicians at FMC Devens advised Mr. Brown that he needed heart valve replacement surgery because the useful life of his mitral heart valve, which had been replaced before his incarceration, had been exhausted and that the shortness of breath he is experiencing is related to that failing heart valve.  (May 25, 2023 Letter at 2.)  Mr. Brown was also recently

4

informed that he needs two heart valve replacement surgeries. (*Id*.) Mr. Brown states in his May 25 letter, without submitting any corroborating materials, that on May 15, 2023, he was taken to see an outside cardiologist at St. Elizabeth's Medical Center in Boston, where a cardiologist examined him, reviewed his most recent echocardiogram and advised Mr. Brown that the symptoms he is experiencing likely are caused by a problem with his tricuspid valve, not his mitral valve. (*Id*.) That cardiologist advised Mr. Brown that his tricuspid valve was leaking, thereby allowing blood to flow back between two of his heart's chambers instead of out of his heart, and that that valve would need to be surgically replaced. (*Id*.) That cardiologist also advised Mr. Brown that his replaced mitral valve had become calcified and would again need to be replaced. (*Id*.) As of May 25, 2023, Mr. Brown has not been told by BOP whether he will receive heart valve replacement surgery, nor has he been prescribed new medication or therapeutic regiment to treat his cardiac conditions. (*Id*.)

With respect to risks caused by COVID-19, the CDC lists heart problems and hypertension as conditions that may expose an individual to increased risk of complications. *See* CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated February 10, 2023; last visited May 29, 2023). Courts have indeed found that defendants with similar conditions meet the "extraordinary and compelling reason" threshold. *See, e.g., United States v. Colvin*, 451 F. Supp. 3d 237, 241 (D. Conn. 2020) (hypertension and diabetes constituted extraordinary and compelling reasons justifying release); *United States v. Bess*, 455 F. Supp. 3d 53, 64 (W.D.N.Y. 2020) (granting compassionate release to prisoner with congestive heart failure, coronary artery disease, severely depressed ventricular function, diabetes, and hypertension and taking judicial notice that COVID-19 causes severe medical conditions and increased lethality for people with advances age

or with underlying health conditions such as serious heart conditions); *United States v. Knight*, 488 F. Supp. 3d 19, 27 (W.D.N.Y. 2020) (finding extraordinary and compelling circumstances in light of COVID-19 where Defendant, a 58-year-old man, had medical conditions including arterial hypertension, coronary heart disease, myocardial infarction, and depressive disorder.); *see also United States v. John*, No. 03 CRIM. 00140, 2023 WL 2898660, at *1 (S.D.N.Y. Apr. 11, 2023) ("The Centers for Disease Control and Prevention ("CDC") lists heart failures and high-blood pressure as medical conditions posing an increased risk for severe illness when infected with COVID-19.") (citing Coronavirus Disease 2019 (COVID-19) – People with Certain Medical Conditions, CTR. DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 10, 2023) ("Having heart conditions such as heart failure . . . and possibly high blood pressure (hypertension) can make you more likely to get very sick from COVID-19.")).

However, other courts have denied compassionate release to individuals suffering from heart problems. *See, e.g., United States v. John*, 2023 WL 2898660, at *1 ("[W]hile acknowledging the seriousness of the Defendant's medical updates, a heart attack does not warrant another reduction in the Defendant's sentence."); *United States v. Olivieri*, No. S2 18 CR. 316 (PAC), 2023 WL 2366859, at *2 (S.D.N.Y. Mar. 6, 2023) (denying compassionate release to prisoner with heart disease who recently underwent heart surgery while in custody). In addition, courts have also denied compassionate release to defendants who, like Mr. Brown, have been vaccinated, even if they had more than one increased risk factor. *See United States v. Carr*, 14 Cr. 055 (LGS) 2021 WL 2043500, at *2–3 (S.D.N.Y. May 20, 2021) (denying compassionate release where the defendant suffered from both hypertension and obesity because, *inter alia*, defendant received COVID-19 vaccine and there were no active COVID-19 cases in the facility).

While Mr. Brown's recent medical events described in his March 15, 2023 and May 25, 2023 letters are serious and concerning, Mr. Brown fails to attach any medical records or declarations corroborating the information in those letters. *See United States v. Carrasco*, No. 19 CR. 475-01 (NRB), 2023 WL 375183, at *2 (S.D.N.Y. Jan. 24, 2023) (Mr. Carrasco offers "no medical records or any other evidence to support his claim," and the Court will not grant compassionate release absent such proof.) (citing *United States v. Castelle*, No. 18-cr-15 (AKH), 2022 WL 4536798, at *2 (S.D.N.Y. Sept. 28, 2022)). Mr. Brown's failure to attach corroborating medical records is detrimental to his ability to satisfy his burden of showing extraordinary and compelling circumstances.

In addition, Mr. Brown's recent submissions (the March 15, 2023 and May 25, 2023 Letters) indicate that the BOP has taken adequate steps to provide increased monitoring of Mr. Brown's heart problems. For example, Mr. Brown states that he was moved to FMC's Devens hospital, where inmates with medical conditions requiring intensive treatment and monitoring are housed. (March 15, 2023 Letter). Mr. Brown also states that he was taken to see an outside cardiologist at St. Elizabeth's Medical Center. (May 25, 2023 Letter at 2.) Mr. Brown does not raise any specific allegations that he is receiving inadequate treatment. *See United States v. Carlton*, No. 05 CR. 796 (PGG), 2023 WL 1070219, at *4 (S.D.N.Y. Jan. 27, 2023) (denying compassionate release where, *inter alia*, Defendant received life-saving medical care in the BOP); *United States v. Gomez*, No. 18CR214NGGSJB, 2023 WL 3504826, at *3 (E.D.N.Y. May 17, 2023) ("Gomez's medical records show his conditions [asthma, hypertension, and heart palpitations] are well controlled and treated during his incarceration, mitigating the risk from COVID-19"); *United States v. Olivieri*, No. S2 18 CR. 316 (PAC), 2023 WL 2366859, at *2 (S.D.N.Y. Mar. 6, 2023) (denying compassionate release to prisoner with heart disease because he

7

"has not established that FMC Devens is unable to adequately care for his conditions or that his worsening health prevents him from caring for himself."); *United States v. Borelli*, No. 84-CR-63, 2021 WL 2228075, at *2-4 (S.D.N.Y. June 2, 2021) (denying compassionate release where defendant suffered from diabetes, cataracts, and heart disease but was able to manage his conditions through BOP medical care). He only states that as of May 25, 2023, the BOP has not advised him as to whether he will receive that heart valve replacement surgery following his May 15, 2023— but it is too soon to tell whether Mr. Brown will receive adequate heart treatment.[1]

Therefore, the Court finds, at this time, that Mr. Brown has not shown an extraordinary and compelling reasons for a sentence reduction.

### III.     18 U.S.C. § 3553(a) Factors

Even if the Court were, in its discretion, to find the existence of extraordinary and compelling reasons, the application of the factors set forth in 18 U.S.C. 3553 (a) counsel against the release which Mr. Brown requests – time served and lifetime supervised release.

First, even though Mr. Brown pled to a nonviolent crime, there is a strong need for him to serve the sentence imposed by the Court. Defendant committed a serious offense: a violation of 18 U.S.C. § 2422(b) for attempted enticement of a minor to engage in sexual activity. (*See* ECF No. 37 (Judgment)). The crime was serious as it involved the use of a computer and an 11-year

---

[1] In his May 25, 2023 letter, Mr. Brown points to the U.S. Sentencing Commissioner's proposed amendments, promulgated in April 2023 and set to come into effect November 2023 unless Congress enacts legislation to modify or reject them. (May 25, 2023 Letter at 2.) Mr. Brown emphasizes that the amendments include two new subcategories to the "Medical Condition of the Defendant" category for what will be a new subsection (b)(1) to Section 1B1.13 of the Guidelines, the first of which is "for a defendant suffering from a medical condition that requires long-term or specialized medical care, without which the defendant is at risk of serious deterioration in health or death, that is not being provided in a timely or adequate manner." *See* Amendments to the Sentencing Guidelines, U.S. Sentencing Commission (Apr. 27, 2023) at 3, available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf. While the Court has discretion to consider these amendments before they go into effect, *see United States v. McMillan*, 863 F.3d 1053, 1058 (8th Cir. 2017), the Court notes that Mr. Brown has not argued that the care he is receiving has been inadequate or untimely, nor has he argued that he is unable to obtain specialized care while in BOP custody.

old victim (or rather, an undercover agent posing as an 11-year old minor), which added points to the offense level during sentencing. (*See* ECF No. 9 (Indictment); ECF No. 25 ("Final Presentence Report") ¶¶ 27–28.) Mr. Brown also engaged in a similar pattern of activity involving prohibited sexual conduct with minor-aged children. (Final Presentence Report ¶ 33.)

Second, Mr. Brown's 292-month sentence was at the *lowest* end of his sentencing guidelines range, which spanned from 292 to 365 months and which Mr. Brown agreed to when he signed his plea agreement. (Final Presentence Report at 20; Brown Opening Mem. Exh. 2 (Plea Agreement)). In addition, when imposing Mr. Brown's sentence, the Court was already aware of and had considered Mr. Brown's history of heart problems based on the information provided in the Final Presentence Report, which described Mr. Brown's physical conditions, including his heart conditions and related surgeries. (*See* Final Presentence Report ¶¶ 56–61.)

Lastly, releasing Mr. Brown now, when he has only served nine years of his sentence, would not serve the principles of deterrence, especially in light of the fact that the mandatory minimum for Mr. Brown's offense *starts* at 120 months' imprisonment (not taking into account any enhancements, including the age of the victim, use of computer, or pattern of similar activity), and the maximum sentence could have been life imprisonment. *See* 18 U.S.C. § 2422(b).

## CONCLUSION

For foregoing reasons, Mr. Brown's 18 U.S.C. § 3582(c)(1)(A) motion is DENIED without prejudice. The Clerk of Court is directed to terminate the motion at ECF No. 53.

Dated:  June 13, 2023                                     SO ORDERED:
        White Plains, New York

                                                          _____
                                                          NELSON S. ROMÁN
                                                          United States District Judge

9