USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/13/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHEN P. BROWN,

Petitioner,

-against-

UNITED STATES OF AMERICA,

Respondent.

14-CR-659 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Petitioner Stephen P. Brown ("Mr. Brown") was sentenced to 292 months of incarceration and one year of supervised release after pleading guilty to one count of attempting to entice an undercover officer, who posed as an eleven-year-old willing to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). (See ECF No. 9 (Indictment); ECF No. 37 (Judgment)). Mr. Brown appealed his sentence to the Second Circuit, which denied his appeal. (ECF No. 43.) Thereafter, Mr. Brown moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), seeking entry of an Order reducing his 292-month sentence to time served and lifetime supervised release. (ECF No. 44.) That motion was denied on July 16, 2019. (ECF No. 49.) On October 18, 2022, Mr. Brown, through his counsel, filed a motion for compassionate release/to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 53), which was fully briefed as of November 22, 2023. On June 13, 2023, this Court denied Mr. Brown's motion for compassionate release without prejudice to renew. (ECF No. 63.) On April 6, 2026, Mr. Brown, through his counsel, filed a renewed motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), which was fully briefed as of July 15, 2026. For the reasons discussed below, the Court DENIES Mr. Brown's motion without prejudice to renew.

## LEGAL STANDARD

18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify or reduce the terms of imprisonment "upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). A court must find that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i). A court must also consider the factors set forth in section 3553(a) to the extent that they are applicable. *Id.* § 3582(c)(1)(A).

"The authority to define 'extraordinary and compelling reasons' has been granted to the United States Sentencing Commission, which has defined that term at U.S.S.G. § 1B1.13, comment n.11." *United States v. Zukerman*, 451 F. Supp. 3d 329, 335 (S.D.N.Y. 2020) (citing *United States v. Ebbers*, No. 02 Cr. 11443, 2020 WL 91399, at *4-5 (S.D.N.Y. Jan. 8, 2020). "Relevant here, the Commission's policy statement and its corresponding commentary…state that a court may reduce a sentence for 'extraordinary and compelling reasons,' including where the defendant is 'suffering from a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" *United States v. Hernandez*, No. 18 Cr. 834-04 (PAE), 2020 WL 1684062, at *2 (S.D.N.Y. Apr. 2, 2020) (quoting U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A)). The defendant must also not be "a danger to the safety of any other person or to the community," and "the reduction must be consistent with [the Commission's] policy statement." *United States v. Ramos*, No. 14 Cr. 484 (LGS), 2020 WL 165812, at *1

(S.D.N.Y. Apr. 7, 2020) (citing U.S.S.G. § 1B1.13(2)-(3)). The Section 3582(c)(1)(A) analysis requires courts to "consider[] the factors set forth in section 3553(a) to the extent they are applicable." *United States v. Gentille*, No. 19 Cr. 590 (KPF), 2020 WL 1814158, at *4 (S.D.N.Y. Apr. 9, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). The factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (4) the sentencing guidelines; and (5) "the need to provide restitution to any victims of the offense." *Ramos*, 2020 WL 1685812 at *2 (quoting 18 U.S.C. § 3553(a)).

## DISCUSSION

### I. Exhaustion

Pursuant to 18 U.S.C. § 3582(c)(1)(A), before seeking relief from the court, a defendant must first seek administrative relief and either exhaust all administrative appeals or wait 30 days from the warden's receipt of the request, whichever occurs first. *Ramos*, 2020 WL 1685812, at *1. "[A]s a general rule, courts are required to strictly enforce statutory exhaustion requirements." *United States v. Hernandez*, 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020).

The Government argues that Mr. Brown has not exhausted his administrative remedies "because his administrative request to BOP was made over a year before Brown filed the instant

motion and relied on his then-existing medical condition." (Govt. Opp. at 18, 21-22.) The Court disagrees.

By the Government's own admission, "[Mr. Brown] submitted a request to BOP for a reduction of his sentence on January 31, 2025" and "BOP denied the request on February 13, 2025." (*Id.* at 21.) The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), provides for no time limits between a request to a Warden of a BOP facility for a BOP-initiated compassionate release motion and the filing of a compassionate release motion following either the rejection by such Warden for a BOP-initiated compassionate release motion or the passage of 30 days from the submission of such a request. Thus, whether measured by the 30-day lapse period or from the BOP's denial of his request for a BOP-initiated compassionate release motion, Mr. Brown has exhausted his BOP administrative remedies.

In any event, numerous cases in the Southern and Eastern Districts of New York exist in which similarly long periods of time passed between the making of a request of a Warden of a BOP facility for a BOP-initiated compassionate release motion and the filing of a compassionate release motion. *See, e.g., United States v. Palacios*, No. 97-CR-646 (CBA), 2025 WL 1446131 (E.D.N.Y. May 20, 2025) (request for BOP-initiated compassionate release motion made on January 4, 2021 and compassionate release motion filed May 7, 2023); *United States v. Colon*, No. 91-CR-685 (LAP), 2023 WL 6283068 (S.D.N.Y. Sept. 26, 2023) (request for BOP-initiated compassionate release motion made on August 22, 2022 and compassionate release motion filed May 7, 2023). Accordingly, Mr. Brown has exhausted his administrative remedies.

## II. Extraordinary and Compelling Reasons Inquiry

Mr. Brown argues that his medical conditions, deteriorating health, FMC Devens's alleged inability to provide adequate medical care, and the additional risks associated with his advanced age constitute extraordinary and compelling reasons warranting a sentence reduction.

Mr. Brown is 74 years old and suffers from several cardiac diseases, having been diagnosed from heart failure, atrial fibrillation (AFib), mitral valve stenosis, tricuspid valve regurgitation, idiopathic cardiomyopathy, recurrent pleural effusion, and hypertension. (Brown Br. at 19-20.) Mr. Brown also suffers from macular degeneration, an eye disease, *id.* at 25-26, embolic strokes, *id.* at 29, as well as spinal osteoarthritis, benign prostate hypertrophy, and hyperlipidemia, *id.* at 29-30. Mr. Brown "relies upon a number of BOP-approved medical devices for his day-today living, including: (1) a four-wheeled walker with chair…; (2) portable supplemental oxygen; (3) sunglasses (to prevent further damage to his eyes); (4) a hernia belt (to support and compress a hernia for which he requires surgery…); (5) a bedside commode (which functions as a toilet when he has difficulty reaching a standard bathroom); (6) a long-handed sponge; [] (7) shoe lace aides; and (8) a reacher (a device that enables him to pick up objects that are difficult to reach)." (*Id.* at 31-32.)

Relying largely on a December 2024 report about FMC Devens by the DOJ's Office of the Inspector General ("OIG") and a report by Dr. Jonathan St. George, a physician whom Mr. Brown engaged to independently evaluate his medical condition, Mr. Brown submits that FMC Devens is neither providing him with adequate medical treatment nor capable of doing so. (*Id.* at 1-5, 14-16; OIG Report, Brown Ex. 8.) According to the OIG'S report, the OIG found, *inter alia*, that "(1) FMC Devens had only one physician and the Clinical Director (also a physician) to provide medical care for its more than 1,000 inmates; (2) two of FMC Devens's six physicians 'were on

extended leave'; and (3) 'three other physician positions were vacant.'" (*Id.* at 14; OIG Report at 10-11.) The OIG also found that FMC Devens suffers from "[s]ignificant and widespread staffing shortages" that "compromise [its] ability to provide adequate healthcare to inmates," including the following "[c]oncerning healthcare practices":

- "a backlog of outside medical visits that had yet to be scheduled";
- "a discrepancy in the number of pending inmate medical records";
- "inconsistent access to medical care for routine conditions";
- "inconsistent routine screening of inmates over age 50 for preventive healthcare or cognitive impairment"; and
- "some medical inmate companions not meeting the BOP's eligibility criteria and performing duties outside the scope of a medical inmate companion, which is prohibited by the BOP."

(Brown Br. at 5; OIG Report at iii.)

Moreover, according to Dr. St. George, "[t]he medical record and [his] interview with Mr. Brown reveal that [Mr. Brown's] ability to engage in appropriate self-care and medical monitoring within the correctional environment is severely compromised." (Brown Br. at 5.) Dr. St. George also found that "Mr. Brown has developed a progressive neurologic syndrome" and that "[his] cumulative burden of disease substantially diminishes his functional capacity. In [his] interview with him, [Mr. Brown] report[ed] significant delays in accessing medical care, difficulty in managing symptoms, and an inability to advocate effectively for timely evaluation." (*Id.* at 3-4.)

The Court previously considered a motion from Mr. Brown seeking compassionate release based, in substantial part, on his medical conditions, advanced age, and the then-risks of COVID-19. (ECF Nos. 53-54.) Although the Court acknowledged that Mr. Brown's health and medical

conditions were "serious and concerning," the Court denied the motion because, at the time, it was too soon to determine whether BOP would be able to provide the medical care that Mr. Brown required. (ECF No. 63 at 7-8.) The Court also noted that Mr. Brown had failed to provide medical records substantiating certain of his assertions, that the submissions before the Court indicated that the BOP was taking adequate steps to increase its monitoring of his cardiac conditions, and that Mr. Brown had been vaccinated against COVID-19. (*Id.* at 4, 7-8.) The Court appreciates the thoroughness of Mr. Brown's present submissions, and the medical records submitted by both parties, which provide a substantially more complete picture of Mr. Brown's current medical condition and treatment than was available to the Court when it considered his prior motion. Nevertheless, having reviewed those submissions, the Court remains unpersuaded that Mr. Brown has established an extraordinary and compelling reason warranting immediate compassionate release.

The December 2024 OIG Report is concerning. In particular, the report documents significant staffing shortages and identifies deficiencies in the provision of medical care at FMC Devens. But the report does not establish that those institutional deficiencies have resulted in Mr. Brown being denied adequate medical care. Indeed, the OIG Report addresses the conditions at FMC Devens generally; it does not contain findings concerning Mr. Brown's individual treatment or conclude that FMC Devens is unable to provide him with the medical care that his conditions require. The medical records before the Court reflect that Mr. Brown has received regular and ongoing medical attention at FMC Devens. In fact, the records document that over the course of the first five months of this year alone Mr. Brown was evaluated by a FMC Devens medical provider on: February 4, 2026, February 20, 2026, March 4, 2026, March 18, 2026, March 19, 2026, April 2, 2026, April 14, 2026, April 17, 2026, April 22, 2026, April 28, 2026, May 19, 2026,

May 26, 2026. (Govt. Opp. at Ex. 2.) The records therefore do not demonstrate that Mr. Brown's medical conditions are going untreated. To the contrary, they reflect ongoing engagement by FMC Devens's medical staff with Mr. Brown's significant medical needs. The fact that Mr. Brown has also been provided with BOP-approved medical devices for use in his daily life—including a four-wheeled walker, supplemental oxygen, a bedside commode, a hernia belt, and other assistive devices—further supports the conclusion that BOP has taken measures to accommodate his medical needs and facilitate his ability to care for himself within the correctional environment.[1] Mr. Brown's diagnosis of a "neurological syndrome" by Dr. St. George is similarly being evaluated and treated. Recent medical records reflect, for example, that on February 19, 2026, Mr. Brown was evaluated by a neurologist, whose notes indicate that he had undergone "genetic testing," had "an MRI of the brain," and had an "upcoming appointment with a stroke specialist," and that, on April 2, 2026, he was "evaluated to discuss neurology recommendations." (Gov't Opp. Ex. 2.)

The Court does not minimize the seriousness of Mr. Brown's medical conditions. Nor does the Court doubt that his health has deteriorated during his incarceration. But the relevant inquiry under § 3582(c)(1)(A) is not whether Mr. Brown's medical care is identical to, or as comprehensive as, the care he might receive outside of prison. Rather, the question is whether his medical circumstances, on their own, constitute an extraordinary and compelling reason warranting a reduction in his sentence. On the present record, they do not. Mr. Brown's medical records demonstrate a serious and substantial need for medical care, but they do not establish that

[1] According to the medical records, Mr. Brown has had a bedside commode since 2017, the hernia belt since 2022, the supplemental oxygen and walker since 2023, and the reacher, long-handled sponge, and shoe lace aids since 2024. (Govt. Opp. at Ex. 2.)

he is unable to provide self-care within the correctional environment or that BOP is failing, or unable, to adequately address his medical needs.

Nor is the fact that Mr. Brown's health has worsened, standing alone, sufficient to warrant compassionate release. Mr. Brown's cardiac conditions and other significant health issues were known at the time of sentencing and were therefore part of the circumstances underlying the sentence imposed. Although his medical condition has changed since then, a deterioration in health does not, without more, justify reducing a lawfully imposed sentence. Were a defendant's worsening medical condition alone sufficient to warrant compassionate release, the compassionate release provision would effectively require a reduction in sentence whenever an incarcerated person developed serious medical problems with age or the progression of a preexisting condition. *See United States v. Pryce*, No. 21-CR-514 (CS), 2025 WL 663060, at *1 (S.D.N.Y. Feb. 28, 2025) (denying compassionate release to prisoner convicted of enticement of a minor in violation of 18 U.S.C. § 2422(b) because the medical records submitted did not suggest "he [was] not getting proper medical treatment"); *United States v. Calderon*, No. 21-CR-748 (CM), 2024 WL 3797182, at *2 (S.D.N.Y. Aug. 13, 2024) (denying compassionate release to prisoner with pre-existing medical conditions because "[t]he Court was aware of [his] medical condition when it sentence[d] him" and "his BOP medical records show that he has met with an outside physical therapist and been prescribed physical therapy to do in his cell"); *United States v. Olivieri*, No. S2 18 CR. 316 (PAC), 2023 WL 2366859, at *2 (S.D.N.Y. Mar. 6, 2023) (denying compassionate release to prisoner with heart disease because he "has not established that FMC Devens is unable to adequately care for his conditions or that his worsening health prevents him from caring for himself.").

Accordingly, while the Court again recognizes the seriousness of Mr. Brown's medical conditions and the legitimate concerns raised by the OIG Report regarding the provision of medical care at FMC Devens, Mr. Brown has not demonstrated that his particular medical circumstances constitute an extraordinary and compelling reason for immediate release under § 3582(c)(1)(A). They do, however, contribute to the combination of circumstances that, as discussed below, warrant a partial reduction in sentence.

**III. Section 3553(a) Factors**

The applicable § 3553(a) factors do not support the substantial reduction to time served that Mr. Brown seeks. They do, however, support a more limited reduction in light of the totality of the circumstances before the Court. The Court recognizes Mr. Brown's extensive rehabilitation during his incarceration and his apparently perfect disciplinary record. The Court also recognizes that, given Mr. Brown's advanced age and significant medical conditions, he is unlikely to pose a substantial danger to the community. These considerations weigh in Mr. Brown's favor.

Mr. Brown's rehabilitation and good conduct, however, do not by themselves warrant a sentence reduction. Indeed, Congress has expressly provided for a reduction in a federal prisoner's sentence based on good conduct through the award of good-conduct-time credit. *See* 18 U.S.C. § 3624(b). Mr. Brown's disciplinary record and resulting time credit for good conduct are therefore already account, to some extent, for his positive conduct while incarcerated. Moreover, Congress has expressly recognized that rehabilitation alone cannot constitute an extraordinary and compelling reason for purposes of § 3582(c)(1)(A). *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). While the Court appropriately considers Mr. Brown's rehabilitation and conduct in evaluating the § 3553(a) factors, those considerations do not, standing alone, justify the relief he seeks.

After decades of predatory behavior, Mr. Brown was sentenced to 292 months' imprisonment after pleading guilty to attempting to entice an undercover officer whom he believed to be an eleven-year-old child to engage in sexual activity. The nature and circumstances of that offense are serious, and the sentence imposed reflects the seriousness of the conduct, the need for just punishment, and the need to afford adequate deterrence to criminal conduct. Mr. Brown has served approximately half of his 292-month sentence. Reducing his sentence to time served would therefore result in his release after serving only approximately half of the sentence imposed, which was already at the bottom of the stipulated Guidelines range. The Court finds that such a substantial reduction would not adequately reflect the seriousness of Mr. Brown's offense, provide just punishment, or afford adequate deterrence.

At the same time, the Court recognizes that the § 3553(a) analysis is not static. Mr. Brown's circumstances have materially changed since his sentencing. He is now 74 years old and suffers from significant medical conditions. As discussed above, those conditions substantially diminish the likelihood that he would pose a danger to the community. And, over more than twelve years of incarceration, Mr. Brown has demonstrated substantial rehabilitation. He has maintained a disciplinary record free of infractions over all 12+ years of his incarceration, completed more than 1,200 hours of rehabilitative programming, accrued 2,461 First Step Act program days, held various jobs within FMC Devens—including positions in food services, the prison chapel, and the education department, where he served as Head Librarian for five years—and participated in various sex-offender treatment programs. (Brown Br. at 38–42.)

The Court also considers the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6). Although the Court remains satisfied that its imposition of a 292-month sentence in

2014 was justified, particularly because the sentence fell at the bottom of the stipulated Guidelines range, the current sentencing landscape provides relevant context for determining whether that sentence remains sufficient to satisfy the purposes of sentencing. The current data before the Court indicate that a 292-month sentence is longer than both the mean sentence of 263 months and the median sentence of 240 months imposed nationwide over the past five fiscal years on defendants sentenced under Section 2G1.3 of the Guidelines, and that those figures are even lower within the Second Circuit and the Southern District of New York. (Brown Br. at 44, 47-48.) These data, together with Mr. Brown's advanced age, significant medical conditions, substantial rehabilitation, and the relatively low likelihood that he would pose a danger to the community, support some reduction in his sentence. *See, e.g., United States v. Glynn*, No. 06-CR-580 (JSR), 2022 WL 562652, at *7 (S.D.N.Y. Feb. 24, 2022) (reducing a defendant's sentence from life imprisonment for murder to 420 months where immediate release "would be totally inconsistent with the severity of his crimes," but concluding that the combination of the defendant's chronic kidney disease, strong evidence of rehabilitation over more than 20 years of incarceration, and young age at the time of offense warranted a "modest" sentence reduction). Like the court in *Glynn*, this Court finds that, given the seriousness of Mr. Brown's offense and the need for just punishment and adequate deterrence, immediate release would be inconsistent with the purposes of sentencing; at the same time, Mr. Brown's advanced age, significant medical conditions, extensive rehabilitation, exemplary conduct during more than twelve years of incarceration, and the current sentencing landscape warrant a meaningful but measured reduction.

## IV. The Nexus Requirement

Finally, the Court considers whether the sentence reduction warranted by the extraordinary and compelling circumstances is consistent with the § 3553(a) factors. "A motion for sentence

reduction can be granted only where there is a nexus between the two because the Court may reduce a defendant's sentence only if the 'extraordinary and compelling reasons warrant such a reduction.'" *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). "While courts rarely consider this nexus requirement explicitly, it comes into focus [where, as here,] a court considers granting a partial reduction in sentence, rather than immediate compassionate release." (*Id.*)

"Here, the nexus is apparent because the Court does not find that any risk of imminent illness or death constitutes an extraordinary and compelling circumstance. Instead, as discussed above, the Court finds that the *combined* facts of [Mr. Brown's serious medical conditions], the evidence of [Mr. Brown's] rehabilitation in the [twelve] years he has been incarcerated, and his [advanced age], constitute, cumulatively, an extraordinary and compelling reason warranting a partial reduction in [Mr. Brown's] sentence." (*Id.*) (emphasis added) They do not, however, warrant the immediate release Mr. Brown seeks. Indeed, releasing Mr. Brown after he has served only half of his sentence would be "inconsistent with the severity of his crimes," the need for just punishment, and the need to afford adequate deterrence to criminal conduct. (*Id.*)

"How much of a reduction these circumstances warrant is a very different inquiry, not subject to any guidelines or other prescribed calculation." (*Id.*) Balancing the extraordinary and compelling circumstances against the relevant § 3553(a) factors, the Court concludes that a meaningful but measured reduction is appropriate. Mr. Brown's advanced age and significant medical conditions substantially diminish the likelihood that he poses a danger to the community; his more than twelve years of incarceration have been marked by extensive rehabilitation and an apparently perfect disciplinary record; and current sentencing data indicate that his 292-month sentence is longer than both the mean and median sentences imposed on similarly situated defendants over the past five years. At the same time, the seriousness of Mr. Brown's offense, the

need for just punishment and deterrence, and the fact that he has served only approximately half of his sentence weigh against immediate release.

Weighing all of these considerations, the Court concludes that a 24-month reduction strikes the appropriate balance. A reduction of 24 months recognizes the substantial changes in Mr. Brown's circumstances since his original sentencing while leaving in place a considerable term of imprisonment that continues to reflect the seriousness of his offense and the purposes of sentencing. The Court further concludes that a 268-month sentence is sufficient, but no greater than necessary, to achieve the purposes of criminal sentencing and is consistent with the applicable § 3553(a) factors.[2]

**CONCLUSION**

For the foregoing reasons, Mr. Brown's motion for time served and compassionate release is DENIED without prejudice to renew; however, pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court reduces Mr. Brown's term of imprisonment from 292 months to 268 months. All other aspects of his sentence remain in full force and effect.

The Clerk of Court is directed to terminate the motion at ECF No. 64.

Dated: August 13, 2026
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

[2] This newly imposed sentence of 268 months is also more consistent with the 263-month mean sentence imposed on similarly situated defendants nationwide under Section 2G1.3 of the Sentencing Guidelines over the past five years.